**Richard A. ZUMMO, Plaintiff–Respondent,**

v.

**DIRECTOR OF REVENUE, Defendant–Appellant.**

No. 27442.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 31, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

Richard Don Crites, Springfield, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

The Director of Revenue (Director) revoked the driving privileges of Richard A. Zummo (Zummo) for one year after he refused to submit to a chemical test of his breath to determine his blood alcohol content. Zummo filed a petition for review. At trial, the only evidence presented by either party was a certified copy of Zummo's driving records from the Department of Revenue. The trial judge decided "the arresting officer did not have reasonable cause to believe that [Zummo] was operating a motor vehicle in an intoxicated or drugged condition[.]" Therefore, the court entered a judgment setting aside the administrative revocation and reinstating Zummo's driving privileges. The Director contends the judgment is not supported by the evidence. We agree. The judgment is reversed, and the cause is remanded with directions to reinstate the Director's one-

year revocation of Zummo's driving privileges.

## I. Summary of the Relevant Statutory Framework

A person who operates a motor vehicle upon a public highway of this state is deemed to have consented to have his or her breath, blood, saliva or urine chemically tested to determine the individual's blood alcohol content after being arrested "for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated ... condition[.]" § 577.020.1(1).[1] If an arrestee refuses to take the chemical test, the officer is required to forward a sworn report to the Director. § 577.041.2. Upon receipt of the officer's report, the Director is required to revoke the individual's driving privileges for one year. § 577.041.3.

■■■ By filing a petition for review, the individual can obtain a post-revocation hearing in circuit court. § 577.041.4. There are only three issues to be decided at the hearing: "(1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); § 577.041.4. "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." § 577.041.5. The burden of proof rests on the Director. *Rain v. Director of Revenue*, 46 S.W.3d 584, 587 (Mo.App. 2001). If the Director makes a *prima facie* case for revocation, however, the burden of producing evidence to rebut the Director's case shifts to the driver. *Ha-*

*mor v. Director of Revenue*, 153 S.W.3d 869, 872 (Mo.App.2004); *see Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 546 (Mo. banc 2003).

## II. Standard of Review

■■■ We must affirm the trial court's judgment unless: (1) there is no substantial evidence to support it; (2) it is against the weight of the evidence; (3) the trial court erroneously declared the law; or (4) the trial court erroneously applied the law. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); *Laney v. Director of Revenue*, 144 S.W.3d 350, 352 (Mo.App.2004). If the evidence is uncontroverted and the real issue is the legal effect of the evidence, there is no need to defer to the trial court's judgment. *See Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). "Appellate courts do not give any deference to a trial judge's determination regarding the credibility of witnesses in cases submitted solely upon a written record." *Callanan v. Director of Revenue*, 163 S.W.3d 509, 513 (Mo.App.2005); *Jarrell v. Director of Revenue*, 41 S.W.3d 42, 46 (Mo.App.2001). Furthermore, in license revocation cases, "neither a trial court nor an appellate court may disregard uncontroverted evidence supporting the fact that all elements of the Director's case were met." *Howdeshell v. Director of Revenue*, 184 S.W.3d 193, 197 (Mo.App.2006); *Curnutt v. Director of Revenue*, 142 S.W.3d 225, 227 (Mo.App.2004).

## III. Factual and Procedural Background

In May 2005, Zummo was notified by the Department of Revenue (DOR) that his driving privileges would be revoked for one year because he refused to submit to a chemical test of his blood alcohol content.

---

1. All references to statutes are to RSMo Cum. Supp. (2005) unless otherwise specified.

He filed a petition for review pursuant to § 577.041.4.

In December 2005, a post-revocation hearing was held. The Director's case-in-chief consisted of 11 pages of certified DOR records concerning Zummo, which the trial court admitted in evidence as Exhibit A. The arresting officer's alcohol influence report (AIR) and incident report were included in this exhibit. The uncontroverted facts established by these two documents, which neither the trial court nor we may disregard, are summarized below.

On May 26, 2005 Officer Steve Ramey (Ramey) was driving northbound in his patrol car on Glenstone Avenue in Springfield, Missouri. At 10:46 p.m., he observed a 1989 Ford F–150 pickup quickly turn onto a side street without signaling or braking. The pickup was being driven by Zummo. Ramey followed Zummo, who quickly turned onto another street without signaling. At that point, Ramey initiated a traffic stop.

As Ramey approached the truck, he could smell "a strong odor of intoxicants" coming from inside the vehicle. When Zummo was asked for his license, he fumbled for his wallet for 20 seconds before finally retrieving it. During this time, Ramey noted that Zummo was avoiding eye contact "as if trying to hide his breath that was already strong." When Zummo did look at Ramey, the officer noted that Zummo's eyes were "staring and glassy." Ramey also noticed that Zummo's movements were "very lethargic and his speech was very slurred." Zummo denied that he had been drinking. When Ramey asked Zummo to exit his vehicle, he said, "I'm sorry, I decline your offer." The officer repeated this request two more times and received the same response each time. Finally, Zummo asked, "am I a threat to you[?]" Ramey responded that Zummo was not a threat, but he still needed to exit his vehicle.

When Zummo got out of his pickup, he put his hands in the air and began walking backwards toward Ramey's patrol car. Although Zummo was walking very slowly, he was having trouble balancing. Ramey told Zummo that he could lower his hands and asked him to walk to the side of the patrol car. At that point, Zummo stopped walking and again said, "I decline your offer." Zummo also refused to perform any field sobriety tests.

At 10:50 p.m., Ramey arrested Zummo for driving while intoxicated. He was transported to the Greene County jail. Once there, he was advised of the requirements of Missouri's implied consent law and asked to submit to a chemical test of his breath to determine his blood alcohol content. He refused to comply. Ramey then issued Zummo a citation for driving while intoxicated, another citation for failing to signal and a notice that his driving privileges were revoked.

■ There was one discrepancy in the documents contained in Exhibit A. The AIR specifies the location of the arrest at Kentwood Avenue and Meadowmere Street in Springfield, Missouri. The incident report contains references to the location of the arrest in three different parts of the report: the administrative information section, the arresting officer's narrative summary and the arrest information section. In the administrative information section, the location of the stop is listed as "S Kentwood AV/E Meadowmere St." The officer's narrative states:

On 5–26–05 at 2246 hours, I was northbound on Glenstone approaching Meadowmere when I noticed a vehicle in the left hand turn lane without a turn signal on or break [sic] lights. The vehicle was facing north and quickly turned west onto Catalpa without signaling. The ve-

hicle went to the intersection of Catalpa and Kentwood and turned back to the south, again, the driver did not use the turn signal. I activated my lights and sirens and pulled the vehicle over on Meadowmere and Kentwood.[2]

The arrest information section of the incident report, however, lists the arrest location as "N Glenstone AV/E Kearney St."

After Exhibit A was admitted in evidence, Zummo did not testify or offer any other evidence on his behalf. He did not dispute the fact that he was arrested or that he refused the test. Instead, his argument was that Ramey lacked reasonable grounds to believe Zummo was driving while intoxicated because: (1) the internal inconsistency in the incident report concerning the location of the arrest created a credibility issue that permitted the trial court to disregard all of the other facts contained in both the incident report and the AIR; and (2) the four-minute time period between the stop and the arrest was too short to determine intoxication.

At the conclusion of the hearing, the court ordered the Director to reinstate Zummo's driving privileges because "the arresting officer did not have reasonable cause to believe that [Zummo] was operating a motor vehicle in an intoxicated or drugged condition." This appeal followed.

## IV. Discussion and Decision

■ The Director contends that the trial court's judgment is not supported by the evidence because Officer Ramey had reasonable grounds to believe Zummo had been driving while intoxicated. She argues that the uncontroverted documentary evidence presented to the trial court was sufficient to establish a *prima facie* case, which Zummo failed to rebut. We agree.

■ To establish a *prima facie* case, the Director had to prove the following three elements by a preponderance of the evidence: (1) whether Zummo was arrested or stopped; (2) whether Ramey had reasonable grounds to believe Zummo was driving a motor vehicle while in an intoxicated condition; and (3) whether Zummo refused to submit to a chemical test. *See Tarlton v. Director of Revenue*, 201 S.W.3d 564, 568 (Mo.App.2006); § 577.041.4. To meet that burden, the Director offered Exhibit A. This exhibit, which consisted of certified copies of the Director's records, was properly admitted in evidence by the trial court pursuant to § 302.312 RSMo (2000).[3] As noted above, Exhibit A contained copies of the AIR and Ramey's incident report. "The facts necessary to establish the Director's *prima facie* case can be proven through such documentary evidence alone." *Howdeshell v. Director of Revenue*, 184 S.W.3d 193, 197 (Mo.App. 2006); see *Curnutt*, 142 S.W.3d at 227; *Burk v. Director of Revenue*, 71 S.W.3d 686, 687 (Mo.App.2002); *Lyons v. Director of Revenue*, 36 S.W.3d 409, 411 (Mo.App. 2001).

The AIR and incident report contain sufficient facts to prove that Zummo was arrested and refused the breath test, and Zummo does not argue otherwise on ap-

2. Since the location of these well-known, established streets within the City of Springfield is a matter of common knowledge, we take judicial notice of that fact. *See State v. Spain*, 759 S.W.2d 871, 874 (Mo.App.1988); *Gaines v. Corning*, 672 S.W.2d 699, 701 (Mo.App. 1984). We also judicially notice that Ramey's description of the route followed by Zummo's vehicle is consistent with the layout of these streets.

3. The first subsection of the statute states that "[c]opies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue ... and copies of any records, properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state and in all administrative proceedings."

peal. Therefore, the first and third elements of the Director's *prima facie* case were met. The only dispute is whether Officer Ramey had reasonable grounds to believe Zummo was driving a motor vehicle in an intoxicated condition.

■ Reasonable grounds and probable cause are virtually synonymous. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); *Rain v. Director of Revenue*, 46 S.W.3d 584, 587 (Mo.App.2001).[4] "The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation." *Brown v. Director of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002). This level of probable cause exists "when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." *Rain*, 46 S.W.3d at 587. As recorded in the AIR and incident report, Ramey made the following observations before and during the traffic stop: (1) the erratic operation of Zummo's pickup; (2) the fact that Zummo's eyes were glassy and staring; (3) the strong odor of alcohol on his breath; (4) his furtive attempts to hide that fact from Ramey by avoiding eye contact; (5) Zummo's very slurred speech; (6) a delay in retrieving his driver's license; (7) his lethargic movements; (8) the fact that he staggered while attempting to walk slowly backwards; and (9) his refusal to perform any field sobriety tests. The foregoing facts, which were admitted in evidence via Exhibit A, were sufficient to prove the second element of the Director's *prima facie* case. *See, e.g., Edmisten v. Director of Revenue*, 92 S.W.3d 270, 274 (Mo.App.2002) (facts supporting reasonable grounds included erratic driving, odor of alcohol, slurred speech,

watery eyes and refusal to take field sobriety tests); *Rain*, 46 S.W.3d at 588 (facts supporting reasonable grounds included erratic driving, glassy-looking eyes, unsteadiness, slurred speech and trouble concentrating). Once the Director made a *prima facie* case, the burden of producing evidence to rebut the Director's case shifted to Zummo. *See Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 546 (Mo. banc 2003); *Smith v. Director of Revenue*, 77 S.W.3d 120, 124 (Mo.App.2002). Inasmuch as Zummo presented no evidence to controvert any of these facts, he failed to rebut the Director's *prima facie* case.

In so holding, we have not ignored Zummo's argument that the Director failed to even make a *prima facie* case because of the internal inconsistency in the incident report. Reduced to its essence, Zummo's argument is that this one inconsistency created a credibility issue which so impugned the integrity of the report that the trial court could disregard all of the other facts contained in both the incident report and the AIR. We reject that assertion.

■ Before a trial court can disregard evidence that supports the Director's *prima facie* case, "there must be a legitimate factual dispute or credibility determination for the court to make." *Howdeshell v. Director of Revenue*, 184 S.W.3d 193, 199 (Mo.App.2006). We recognize that, "[i]n rare instances, a trial court can be required to decide a legitimate factual dispute that arises because the documentary evidence presented by the Director is internally inconsistent." *Id.; see, e.g., Richardson v. Director of Revenue*, 165 S.W.3d 236, 241 (Mo.App.2005); *Reece v. Director of Revenue*, 61 S.W.3d 288, 292 (Mo.App. 2001). To uphold a decision by the trial court that the Director failed to make a

---

4. The trial court used the phrase "reasonable cause" in its judgment. Because reasonable grounds and probable cause are virtually synonymous, we conclude that the use of this hybrid term, though incorrect, did not have any significant effect on the decision below.

*prima facie* case, however, such an internal inconsistency would have to create a legitimate credibility dilemma with respect to a material aspect of the Director's case. *See Howdeshell,* 184 S.W.3d at 199; *Clark v. Director of Revenue,* 132 S.W.3d 272, 278 (Mo.App.2004); *McCarthy v. Director of Revenue,* 120 S.W.3d 760, 763 (Mo.App. 2003); *Smith,* 77 S.W.3d at 124. For example, in both *Richardson* and *Reece,* the AIR was internally inconsistent with respect to whether the driver refused the test. *Richardson,* 165 S.W.3d at 241; *Reece,* 61 S.W.3d at 292. Since the driver's refusal to be tested was an element of the Director's *prima facie* case, these discrepancies were material and created legitimate credibility issues for the trial courts to decide.

In the case at bar, no such legitimate credibility dilemma was created by the one discrepancy in the incident report concerning the location of Zummo's arrest. In the judgment, the only ground stated by the trial court for reinstating Zummo's driving privileges was that Ramey lacked reasonable grounds to believe Zummo was operating his pickup in an intoxicated condition. Where Zummo was arrested has no bearing on whether the facts known to Ramey prior to the arrest were sufficient to establish such reasonable grounds. To the extent the inconsistency in the incident report created a dispute as to whether Zummo was actually arrested, we note that the Director was only required to prove that Zummo was arrested or stopped in order to make a *prima facie* case; she did not have to prove where that occurred. In any event, it is evident from the judgment that the trial court resolved the issue of whether Zummo was arrested against him. Therefore, the single inconsistency in the incident report concerning the location of Zummo's arrest did not create a legitimate credibility issue as to a material aspect of the Director's case to which we must defer on appeal. *See, e.g.,*

*Howdeshell,* 184 S.W.3d at 199; *Clark,* 132 S.W.3d at 279.

Relying on *York v. Director of Revenue,* 186 S.W.3d 267 (Mo. banc 2006), Zummo also contends the judgment should be sustained because the trial court could have legitimately determined that the four-minute time period between the stop and arrest was an insufficient amount of time for Ramey to develop reasonable grounds to believe Zummo was intoxicated. In our view, *York* is so factually dissimilar that it provides no support for Zummo's contention.

York was stopped at a sobriety checkpoint. He was not driving erratically and was able to produce his license and insurance card without difficulty. He was arrested after only three minutes. *Id.* at 269. During this limited amount of time, the trooper claimed to have detected signs that York had been drinking, performed three field sobriety tests (the horizontal gaze nystagmus test, the walk-and-turn test, and a one-leg stand test) and performed a portable breathalyzer test. More importantly, the trooper "admitted at trial that she improperly administered all of these tests and that her failure to do so seriously compromised their validity." *Id.* Based on these very different facts, the trial court concluded that the trooper lacked reasonable grounds to conclude that York had been operating his vehicle while intoxicated. Because the trial court was presented with controverted evidence concerning the reliability of the test results upon which the trooper relied in developing reasonable grounds, the Supreme Court affirmed that credibility determination. *Id.* at 272. Thus, the amount of time the trooper spent with York was only one part of the controverted factual matrix upon which the trial court in that case based its decision.

In the case at bar, Ramey's account in the AIR and incident report of

the events that transpired was uncontroverted. As already noted above, neither the trial court nor we are permitted to disregard uncontroverted evidence establishing the elements of the Director's *prima facie* case. *Howdeshell,* 184 S.W.3d at 197; *Curnutt v. Director of Revenue,* 142 S.W.3d 225, 227 (Mo.App.2004). In determining whether the Director met her burden of proof, a trial court is free to rely on reasonable inferences from the evidence. *Jones v. Director of Revenue,* 189 S.W.3d 187, 190–91 (Mo.App.2006). Inferences that are forced or based on speculation, conjecture or guesswork are not reasonable. *See Hertz Corp. v. Raks Hospitality, Inc.,* 196 S.W.3d 536, 549 (Mo.App. 2006). Zummo argues the trial court could infer that the observations recounted by Ramey in the AIR and incident report simply could not have taken place within a four minute window. Given the fact that Zummo refused to perform any field sobriety tests and no portable breathalyzer test was attempted, an inference that Ramey did not have time to make the other observations contained in the AIR and incident report would be based on nothing more than speculation, conjecture or guesswork. A trial court may not rely upon such an unreasonable inference to decide that the Director has failed to make a *prima facie* case. *See Jones,* 189 S.W.3d at 190–91; *Hertz Corp.,* 196 S.W.3d at 549.

The Director's point is granted. She made a *prima facie* case for revocation, which Zummo failed to rebut. Therefore, we reverse the judgment and remand the cause with directions that the circuit court reinstate the one-year revocation of Zummo's driving privileges.

BARNEY and LYNCH, JJ., Concur.